UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

08 JUN -3 PM 2:47

UNITED STATES OF AMERICA,

        Plaintiff,

v.

Christopher SAINT-Lucero,
and
Manley Lamont SMITH,

        Defendant(s)

Magistrate Case No.

COMPLAINT FOR VIOLATION OF:

Title 8 U.S.C., Sec. 1324 (a)(1)(i)-(v)
Conspiracy to Transport

The undersigned complainant, being duly sworn, states:

On or about **June 1, 2008**, within the Southern District of California, defendant **Christopher SAINT-Lucero** and **Manley Lamont SMITH** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that alien, namely, **William Edgardo ROMERO-Estrada,** had come to, entered and remained in the United States in violation of law, did transport and move, said alien within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(i)-(v).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
Thomas L. Englehorn
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS 3rd DAY OF JUNE 2008.

Leo S. Papas
UNITED STATES MAGISTRATE JUDGE

CONTINUATION OF COMPLAINT:
Christopher SAINT-Lucero
Manley Lamont SMITH

## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that **William Edgardo ROMERO-Estrada**, is a citizens of a country other than the United States; that said alien has admitted that he is deportable; that his testimony is material, that it is impracticable to secure his attendance at the trial by subpoena; and he is a material witness in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On May 30, 2008, Wackenhut Transportation Officer (hereinafter referred to as T.O.) Vincent Reyes reported that he believed Wackenhut Sergeant Christopher SAINT-Lucero was involved in alien smuggling. SAINT admitted to T.O. Reyes that he had done this about ten times prior.

Agents assigned to the San Diego Sector Smuggling Interdiction Group (SIG) responded to this report. On June 1, 2008, SIG Agent M. Ortiz was placed in a holding cell at the Chula Vista Border Patrol Station in Chula Vista, California under the name Alberto RODRIGUEZ-Osegueda, was listed as a citizen of Mexico, and was presented as processed for voluntary return to Mexico. William Edgardo ROMERO-Estrada, an undocumented alien from El Salvador, had been processed as a voluntary return to Mexico under the name Juan Carlos BARRENTOS-Estrada, was also in the cell  Agent Ortiz and ROMERO were listed on Bureau form I-216 Record of Departure along with five other Mexican nationals. The I-216 form is used to document the departure of Mexican nationals to Mexico. The departure is physically verified by Mexican immigration officials at the Ports of Departure and the forms are stamped by the Mexican officials and are to be returned to the Station from which the Mexican nationals were apprehended.

At about 11:00 a.m., SAINT-Lucero arrived to transport Mexican nationals housed at the Chula Vista Border Patrol Station who were processed as voluntary returns to Mexico. SAINT-Lucero read names from the manifest I-216 and lined everyone up in the holding facility for loading into a bus used for transportation to the San Ysidro Port of Departure. Agent Ortiz and William Edgardo ROMERO-Estrada were loaded into the bus and transported to the San Ysidro Port for departure to Mexico. The driver of the marked Wackenhut MCI bus was identified as to T.O. Otha Hayes. SAINT-Lucero was his assigned partner for this shift.

At the gate, Agent Ortiz was interviewed by Mexican Immigration Officers. Agent Ortiz was questioned as to his citizenship. Agent Ortiz said he was from El Salvador. The Mexican immigration officer informed T.O. Hayes that Agent Ortiz was from El Salvador. T.O. Hayes yelled to SAINT-Lucero, who was several feet away, "This guy is a OTM." (Other than Mexican). Agent Ortiz was placed aside. William Edgardo ROMERO-Estrada approached the Mexican immigration officer at the gate and was asked where he was from. ROMERO admitted that he was also from El Salvador. ROMERO was placed alongside Agent Ortiz until such time that the rest of the individuals could be interviewed.

Christopher SAINT-Lucero approached Agent Ortiz and William Edgardo ROMERO-Estrada. Agent Ortiz asked SAINT-Lucero, in the Spanish language, to give them a break.  SAINT replied, in the Spanish language, "Give you a break?" "Do you have any money?" SAINT-Lucero then placed handcuffs on Agent Ortiz and ROMERO-Estrada and escorted them into the bus. T.O. Hayes remained with the rest of the group being voluntarily returned to Mexico. In the Spanish language, SAINT-Lucero asked Agent Ortiz and ROMERO where they were going. Agent Ortiz and ROMERO said they were going to Los Angeles. SAINT-Lucero asked if they had money. Agent Ortiz said he didn't have any on him. ROMERO said he was going to originally pay $3,000.00 dollars to be smuggled. Agent Ortiz then said he could pay $1,000.00.

2

SAINT-Lucero said, "O.K. Let me make a call." SAINT-Lucero instructed Agent Ortiz and ROMERO not to say anything else until later. Agent Ortiz observed SAINT-Lucero use his telephone to attempt to alert someone with what Agent Ortiz believed to be a Nextel phone. Agent Ortiz noticed that no one was answering.

As T. O. Hayes entered the bus to depart the area, SAINT-Lucero told him that when they were to return to the Chula Vista Border Patrol Station, he would take care of the kick-backs (the rejected undocumented aliens that are other than Mexican citizens). SAINT-Lucero made the comment to Officer Hayes that he would take Agent Ortiz and ROMERO in a marked Wackenhut Jeep to the original station in which they were processed. T.O. Hayes asked SAINT-Lucero why because the undocumented aliens were processed at the Chula Vista Station. SAINT-Lucero told T.O. Hayes to "Just do and don't ask." TO Hayes drove the bus to the Chula Vista Border Patrol compound, but did not return to the processing building. They stopped at the gasoline pumps on the far southern side of the compound.

As the bus pulled up to the gas pumps, a marked Wackenhut Jeep Liberty pulled up behind it. SAINT-Lucero jumped out of his seat and told T.O. Hayes to stop the bus. SAINT-Lucero went to the driver, identified as defendant Manley Lamont SMITH, of the Jeep, spoke to him briefly and walked back to the bus. SAINT-Lucero instructed T.O. Hayes to take a lunch break. Once T.O. Hayes departed, SAINT-Lucero instructed Agent Ortiz and ROMERO-Estrada to get out of the bus and get into the jeep. Agent Ortiz got in first and sat behind Manley Lamont SMITH, the driver, while ROMERO sat behind Christopher SAINT-Lucero, the passenger. Agent Ortiz heard SAINT-Lucero say to SMITH in the English language, "$5,000.00 bucks!" SMITH then said in the English language to SAINT, "$5,000.00!" in an excited tone of voice. SMITH told SAINT-Lucero, "I have my car here, I can take them or I can stash them until later." SAINT told SMITH, "Let's see, let's go to your car." SAINT-Lucero then told SMITH, "I'll drop them off, call me later." Manley Lamont SMITH drove the Jeep to his car and exited the Jeep. SAINT-Lucero got in the driver's seat of the Jeep and left the Chula Vista Station compound with Agent Ortiz and ROMERO handcuffed in the back seat.

On the way to the drop off point, in the Spanish language, SAINT-Lucero informed Agent Ortiz and ROMERO-Estrada that he would take them to a park near the Border Patrol Station. SAINT-Lucero said he would drop Agent Ortiz and ROMERO off and would call his brother-in-law to pick them up. SAINT-Lucero said that if his brother-in-law could not pick them up, he would pick them up himself. SAINT-Lucero said he was the law, the authority and to do as he says. SAINT-Lucero said not to worry because he was the law. SAINT told Agent Ortiz and ROMERO they would not get caught, and they would make it to Los Angles. He would see to it. SAINT-Lucero said once in Los Angeles they would call their families to make the payment arrangements. SAINT instructed them to wait at the park and not to leave or speak to anyone. SAINT-Lucero told Agent Ortiz and ROMERO not to walk around because there were a lot of Border Patrol Agents around.

Agent Ortiz observed SAINT-Lucero drive to Howard Lane Neighborhood Park located on the northwest corner of the intersection of Dairy Mart Road and Beyer Boulevard. SAINT instructed Agent Ortiz and ROMERO to remain at the park and to not dare leave or they would "pay for it". SAINT-Lucero instructed Agent Ortiz and ROMERO to not speak with anyone. SAINT handed ROMERO a handcuff key and told them to take the cuffs off. SAINT-Lucero pulled along the curbside on Dairy Mart Road and instructed Agent Ortiz and ROMERO to get out and walk to the area where they were to wait.

CONTINUATION OF COMPLAINT:
Christopher SAINT-Lucero
Manley Lamont SMITH

Agents M. Hansen, L. Rodriguez, T. Engelhorn and Supervisory Border Patrol Agent S. Harkenrider set up static surveillance of Agent Ortiz and ROMERO. Several additional Border Patrol Agents in full uniform and operating marked Border Patrol vehicles staged out of sight approximately two blocks to the west.

Approximately an hour later, at about 1:20 p.m., Agents Hansen, Harkenrider and Ortiz observed a black Toyota Tundra pickup drive southbound, adjacent to the park at a slow rate of speed. Christopher SAINT-Lucero was behind the wheel. SAINT-Lucero was still wearing his Wackenhut uniform. As he passed Agent Ortiz' location, SAINT-Lucero signaled for them to wait. SAINT-Lucero made a left turn toward Beyer Boulevard, made eye contact with Agent Ortiz and drove off.

About ten to fifteen minutes later, at approximately 1:30 p.m., SAINT-Lucero returned in the same Toyota truck. SAINT-Lucero parked at the northwest corner of the park, lowered his passenger side rear window and motioned for Agent Ortiz and ROMERO to come to the truck. Agent Ortiz opened the rear door of the truck and ROMERO entered the Toyota. Agent Ortiz opened the passenger's side front door. Agent Ortiz observed that SAINT-Lucero was still in full duty uniform with badge and duty holster to include his service issued firearm. Agent Ortiz identified himself as a Federal Agent and ordered SAINT-Lucero to raise his hands and not to move. Agents converged on the Toyota simultaneously. Agent Ortiz placed SAINT-Lucero under arrest for alien smuggling. SAINT-Lucero, the black Toyota Tundra and ROMERO were taken to the Chula Vista Border Patrol Station for processing.

At about 1:45 p.m., Agents Ortiz, Rodriguez, Hansen and Harkenrider walked into to the Wackenhut office, known as "Barracks 4". Agents observed defendant Manley Lamont SMITH sitting at a desk near the doorway. SMITH was in full duty uniform with his service issued firearm on his person. Agents placed SMITH under arrest for alien smuggling. Agents walked SMITH to the Chula Vista Border Patrol Station for processing. While walking from building to building, without having been asked any questions, SMITH stated, "Oh I know what this is about, I know now."

### Statement of Defendant #1 Christopher SAINT-Lucero:

Defendant #1 was advised of his Miranda Rights and he stated that he understood his rights and he was willing to make a statement without an attorney present. In summary, SAINT admitted that while he was on official duty as a Wackenhut contract Transportation Officer for the Border Patrol on June 1, 2008, he and defendant #2 Manley Lamont SMITH made arraignments to smuggle two undocumented aliens for financial gain. Defendant #1 explained that he targeted two undocumented aliens that posed as Mexican citizens, but was from a country other than Mexico. While sending a group of undocumented aliens through the voluntary return process, the Mexican Immigration officials declined to accept the material witness William Edgardo ROMERO-Estrada and an undercover Border Patrol Agent because they were not citizens of Mexico. Defendant #1 stated that he discussed the smuggling process and fee with ROMERO and the undercover Agent and they agreed on a set price of $2,500.00 USD to be smuggled to Los Angeles, California. Defendant #1 stated that he transported the undocumented aliens to the Chula Vista Border Patrol Station then he transferred the two smuggled aliens from a bus to a jeep and he dropped the undocumented aliens off at a park located near the Chula Vista Station in order to await further transportation within the United States. Defendant #1 stated that he returned to the park to pick up the smuggled aliens in his personally owned vehicle. Upon arrival to the park, Defendant #1 loaded the smuggled aliens into his vehicle and he was subsequently arrested by the undercover Agent and other Agents staged near the park.

CONTINUATION OF COMPLAINT:
Christopher SAINT-Lucero
Manley Lamont SMITH

## Statement of Defendant #2 Manley Lamont Smith:

The defendant was advised of his Miranda Warnings and was willing to make a statement without an attorney present. In summary, SMITH while on official duty was offered by defendant #1 to smuggle illegal aliens for financial gain. He was met by SAINT at the Chula Vista Station Gas Pumps and the two bodies were transferred into SMITH's transportation vehicle. When he questioned SAINT if they were going to drop off the bodies at the station SAINT replied "No" they had offered him $5,000.00. SMITH stated he agreed to the offer in a jokingly manner by responding "Oh, Ok, I got my car here." He then was questioned if he remembered their previous landlord Claudia and her husband to whom he stated he did. SMITH stated he informed an individual identified as Andrea Martinez of the offer he received from SAINT. He told her of the whole event and she questioned as to why he was telling her. SMITH told Andrea Martinez that the $5,000.00 would get them what they always were talking about; a motorcycle. He stated to Andrea that he would not do the event. A while later SAINT had returned and told SMITH he had dropped the aliens off at the Chula Vista Station.

## Material witness Statement of William Edgardo ROMERO-Estrada:

The witness freely admitted to being illegally present in the United States upon initial apprehension and did not have any immigration documents allowing him to be in the United States. ROMERO agreed to work with an undercover agent on the said event. He was asked by the undercover Agent to admit to his citizenship of being an El Salvadoran citizen and not be allowed back to Mexico as a Mexican Citizen. He stated when denied his entry back to Mexico one of the officers from the bus described as a fair skinned, fat, tall, and wearing dark glasses questioned him if he had any money. The witness stated he reached in his pockets and the officer told him to be discreet about it. When questioned by the officer if he had someone to pay for him, both he and the Agent stated they had someone to pay for them in Los Angeles, CA. Upon arrival at the Chula Vista Station the black officer parked the bus. Another shorter black officer in uniform also arrived. He stated the shorter officer parked a small SUV close to the bus as if to move both of them into the SUV without being seen. They traveled in the SUV for several blocks and the driver questioned them again as to how much both of their families in L.A. would be willing to pay for them. ROMERO stated $3,000.00 and the Agent stated $1,000.00. ROMERO stated the driver told them, "I am the law here, don't worry, nothing will happen to you, do everything I say." The officer then handed both individuals a handcuff key in order to remove the handcuffs holding them together. The officer told both individuals to stay at the park he was going to drop them off at and not to flee because he would find them, and things would go badly if he did. ROMERO stated both he and the Agent agreed to comply. After being dropped off at the park he was told by the driver that he or his "compadre" would come back between 1-5 hours.

A short while later a double cab pick-up, dark brown or red, came by and motioned them three times to wait. After a few minutes he returned and gestured for them to get into the vehicle. After entering the vehicle the Agent placed the individual under arrest and ROMERO assisted in helping detain the driver of the pickup. ROMERO was shown two sets of photographic lineups and was able to identify both defendants whom helped them get into the SUV at the Chula Vista Station and the driver who brought them to the park in the SUV and later tried to pick them up in his pickup truck. ROMERO stated that it was corrupt of the officers to try and free them and hand them over to smugglers. It was obvious to ROMERO that this was not an act of kindness. ROMERO expressed pride when he stated of how he was able to help in today's event.